**Walter D. NIDIFFER and wife, Ruth D. Bullington Nidiffer, Plaintiffs-Appellees,**

v.

**CLINCHFIELD RAILROAD COMPANY and the Seaboard Coastline Railroad Company and the Louisville and Nashville Railroad Company, Defendants-Appellants.**

Court of Appeals of Tennessee, Eastern Section.

March 12, 1980.

Permission to Appeal Denied by Supreme Court May 19, 1980.

Ferdinand Powell, Jr., Johnson City, for defendants-appellants; Thomas J. Seeley, Jr., Gen. Counsel, Clinchfield Railroad Co., Erwin, and Joseph S. Fanduzz, Johnson City, of counsel.

Lodge Evans, Elizabethton, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

The principal issue presented on appeal is what duty is owed by an employer in the selection and retention of a group insurance carrier to its employees who elect to become insureds under the group policy.

This suit was instituted after plaintiffs, former employees of Clinchfield Railroad Company, were notified that the employer's group policy insurance carrier, Employees Mutual Benefit Association, was experiencing severe financial difficulties and requiring approximately 100 per cent increase in premium payments. Plaintiffs discontinued their coverages and sued their former employer, alleging defendants[1] were plaintiffs' agents for the purposes of obtaining and maintaining group life insurance policies and had breached their fiduciary duties to the plaintiff in transferring the group life insurance coverages from Prudential Insurance Company of America to Employees Mutual Benefit Association.

Among other things, the trial judge concluded:

> [T]here was an implied and expressed agency relationship and contract between plaintiffs and defendant Clinchfield Railroad Company in the matter of the procurement, handling, and perpetuating the insurance in a sound and solvent insurance company. Plaintiffs had the right to place their trust in their former employer since a fiduciary relationship existed between them, and whenever an agent violates his duties and obligations to his principal, the damage or loss sustained by the principal . . . must be born [sic] and indemnified by the agent.

The court further stated that a letter from the employer at time of the change of insurance companies created an express contractual obligation between the employer and employees based on this statement in the letter: "There will be no change in the amount of your insurance as a result of this transfer, nor will there be any change in your monthly premium." The court further concluded the employer had breached the contract due to the increase in premiums. Plaintiffs were awarded damages in the amount of $6,000.00, the total amount of premiums paid by the plaintiffs for the duration of their group term life insurance policies with Prudential and Employees Mutual Benefit Association.

Defendants insist: plaintiffs' consent was not required to terminate the group policy with Prudential; no agency relationship between the parties existed for the purpose of selecting a group carrier; the increase in premiums was not a breach of contract as a matter of law; and the damages awarded were excessive and not supported by the evidence.

In 1932, Clinchfield Railroad Company entered a group term life insurance contract with Prudential Insurance Company of America to provide group life insurance to Clinchfield employees who elected to purchase coverage. Subsequently, the master policy was amended to allow insured employees to participate after retirement and the policy was renewed annually and remained in force until October 1, 1973.

In September, 1973, Clinchfield terminated Prudential's policy and replaced it with the group policy issued by Employees Mutual Benefit Association. The policy with Employees Mutual provided coverage for all persons insured under the Prudential policy. Clinchfield's agreement with Employees Mutual, separate from the master policy, provided that the monthly premiums paid by each member of the insured group would remain the same and would not thereafter be subject to change. Clinchfield was required to make payroll deductions for its employees participating in the plan and was to receive 10 per cent of the premiums collected to cover administrative expenses.

Plaintiffs' first notice of the change of group carriers was a letter dated September 28, 1973, from Clinchfield stating that effective October 1, 1973, the group life policy

---

1. The record establishes at the time of trial Seaboard and L & N were corporations doing business under the name Clinchfield Railroad Company.

would be transferred from Prudential to Employees Mutual. The letter also informed:

> There will be no change in the amount of your insurance as a result of this transfer, nor will there be any change in your monthly premium. However, beginning with October, 1973, you should mail your payments directly to the E.M.B.A.

Plaintiffs paid their premiums directly to Employees Mutual through 1975. In December, 1975, plaintiffs received notice from the State of Minnesota of a court hearing on a proposed plan of rehabilitation for Employees Mutual. The notice advised that a substantial increase in premiums was necessary to continue their present group life coverage. Plaintiffs, contending at trial they could not afford to pay additional premiums, refused to pay the higher premiums and terminated their coverage.

■ Whether the employer occupies the role of an agent of the employees or the insurer in the case of group insurance policies depends upon the factual circumstances of the case:

> Employers, in doing the various acts required to make effective a policy of group insurance covering employees, such as obtaining the employees' applications, taking payroll deduction orders, reporting changes in the insured group, paying premiums, etc., act for themselves and their employees and not as agents of the insurer;  .  .  .

44 Am.Jur.2d, § 1877 at 811. *Accord: Boseman v. Connecticut General Life Ins. Co.*, 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732 (1937); *Hale v. American Home Assur. Co.*, 224 Tenn. 650, 461 S.W.2d 384 (1970); *Rivers v. State Capitol Life Ins. Co.*, 245 N.C. 461, 96 S.E.2d 431, 68 A.L.R.2d 205 (1957); *McFadden v. Equitable Life Assur.*

*Soc.*, 351 Pa. 570, 41 A.2d 624 (1945); *Hroblak v. Metropolitan Life Ins. Co.*, 79 N.E.2d 360 (Ohio App. 1947).

■ It is not essential to an agency relationship that the parties understand, agree or contract that their acts are those of principal and agent; rather, whether an agency exists is determined by the actual relationship and deeds of the parties, whether they understood there was an agency or not.[2] *Elec. Power Bd. of Met. Gov't., etc. v. Woods*, 558 S.W.2d 821 (Tenn. 1977); *Fisher v. Trion, Inc.*, 49 Tenn.App. 182, 353 S.W.2d 406 (1961); *Rich Printing Co. v. McKellar's Estate*, 46 Tenn.App. 444, 330 S.W.2d 361 (1959).

■ An element of the agency relationship is that the object of the contract be for the benefit of the principal. *Foster Trailer Co. v. U.S. Fid. Co.*, 190 Tenn. 181, 228 S.W.2d 107 (1950). Under a group insurance policy, an employer is acting on behalf of its employees to obtain better rates for them through group purchases.

■ The evidence here establishes both the employer and employees benefited from maintaining a group policy. However, the principal test of agency is whether the principal has a right to control the conduct of the agent with respect to matters entrusted to the agent. It is said this right of control is the primary or the essential test of an agency relationship without which no agency exists. 2A C.J.S. *Agency* § 6, at 560 through 561. *Accord*: 3 Am.Jur.2d, *Agency*, § 2. The same standard applies when the agency relationship is implied: the right of the principal to control the agent's conduct or the actual exercise of such control is the essential test. 2 C.J.S. *Agency* § 52, at 626.

---

2. Defendants advance the argument that *T.C.A.*, § 56–705, in force at the time of the transaction, controls. The employer's act of purchasing the master policy is not within the scope of the statute. The statute provided:

> 56–705. *Solicitors are agents of the insurer—Licensed fire insurance brokers excepted.*—Any person who shall solicit an application for insurance shall in all matters relating

to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers.

In this case, neither Clinchfield's employees nor plaintiffs had any control or right of control over Clinchfield's actions in terminating the group policy with Prudential and neither had any control or right of control in the selection of another carrier, if any, chosen by Clinchfield for the new group policy. In the absence of a provision in the policy or certificate to the contrary or other independent contract, the holders of the certificates of coverage under the group policy have no vested right to continuation of the group policy over the objection of the employer. *Smithart v. Mut. Life Ins. Co.*, 167 Tenn. 513, 71 S.W.2d 1059 (1934); *Davis v. Met. Ins. Co.*, 161 Tenn. 655, 32 S.W.2d 1034 (1930). *See also Lancaster v. Travelers Ins. Co.*, 54 Ga.App. 718, 189 S.E. 79 (1936).

Clinchfield did not contract to provide insurance for its employees but voluntarily secured a group policy for them. One is not liable to an insured for failing to procure insurance where there is no binding contract creating the duty. 3 *Couch on Insurance* 2d, § 25:57. "In the absence of any agreement, or contract to effect, maintain, or renew insurance, no duty to do so arises." *Id.*, at § 25:58 at 367.

We conclude the employer was neither an express nor an implied agent of its employees in the procurement of the group policy with Employees Mutual and no fiduciary relationship in this regard existed between plaintiffs and defendants, but the duty of a volunteer, who undertakes to act, was stated in *Glanzer v. Shepard*, 233 N.Y. 236, 135 N.E. 275 (1922), by Justice Cardozo:

It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all. . . .
135 N.E. 275–6.

*See* Prosser, *Law of Torts* 4th ed., *Limited Duty*, § 56 Acts and Omissions. Clinchfield Railroad, having undertaken to procure a group life insurance policy for its employees, was required to use reasonable care to select a solvent insurance carrier. *See Quinn v. Railroad*, 94 Tenn. 713, 30 S.W. 1036 (1895). Applying this standard, the evidence establishes that defendants conducted an investigation of Employees Mutual by consulting various rating agencies and financial statements made public by the insurance company. Plaintiffs did not establish by a preponderance of the evidence that defendants failed to exercise reasonable care in the selection of the insurance company.

Finally, plaintiffs argue that defendants breached its contract with them as a matter of law. Plaintiffs argue that they are third party beneficiaries under the contract between the employer and the insurance carrier. Neither the master policy nor the certificates contained the provision that the monthly premiums would remain the same. The provision is contained in the agreement to procure the master policy entered between Clinchfield and the insurance company. Plaintiffs may be third party beneficiaries under that agreement. *See Willard v. Claborn*, 220 Tenn. 501, 419 S.W.2d 168 (1967). However, that issue would be the subject matter of another cause of action against the promissor insurance company. *Title Guar. & Trust Co. v. Bushnell*, 143 Tenn. 681, 228 S.W. 699 (1920).

The judgment of the chancery court is reversed and the cause remanded to the trial court for the entry of a judgment dismissing this case. Costs are assessed against appellees.

PARROTT, P. J. (E. S.), and SANDERS, J., concur.