Margie Sue GAINES, et vir.

v.

EXCEL INDUSTRIES, INC., et al.

Robert Jeffery ALLEN

v.

The POSITIVE SAFETY
MANUFACTURING
COMPANY, et al.

Nos. 1–86–0043, 1–86–0038.

United States District Court,
M.D. Tennessee,
Columbia Division.

July 20, 1987.

Robert E. Pryor, Pryor, Flynn, Priest & Harber, Knoxville, Tenn., Wayne F. Hairrell, Hairrell & Doerflinger, Lawrenceburg, Tenn., for plaintiffs.

Walter W. Bussart, R. Stephen Doughty, Thompson & Bussart, Nashville, Tenn., for intervenors Twin City Fire Ins. Co.

Ben Boston, Boston, Bates, Holt & Sands, Lawrenceburg, Tenn., and Schulmen, Leroy & Bennett, P.C., Angus Gillis, III, Nancy Corley, Nashville, Tenn., for Excel Industries, Inc.

## MEMORANDUM

WISEMAN, Chief Judge.

Plaintiffs in these two diversity cases were injured at the Lawrenceburg, Tennessee, plant of their employer, Excel of Tennessee, Inc., in separate accidents involving stamp presses and related safety devices. Plaintiffs' employer is immune from general tort liability by virtue of Tenn.Code Ann. § 50–6–108, the Workers Compensation Law. Defendant Xcel Controls, Inc., the manufacturer of safety switches attached to the press, has been voluntarily dismissed pursuant to Fed.R.Civ.P. 41. Defendant The Positive Safety Co., manufacturer of the press, was granted summary judgment pursuant to the statute of repose, Tenn. Code Ann. § 29–28–103.

The remaining defendant is Excel Industries, Inc. (hereinafter Industries), the parent corporation of Excel of Tennessee, Inc. Plaintiffs' principal theory is that Industries assumed a duty of care to the plaintiffs when it undertook safety inspection tours of the Lawrenceburg plant and then negligently failed to see that certain safety measures were implemented.

Before the Court now in both cases are identical motions for summary judgment by defendant Industries on the grounds that plaintiffs' theory against it (1) fails to state a claim for negligence because, as a matter of law, Industries had no duty and

assumed no legal duty to the plaintiffs; (2) is barred by the products liability statute of repose, Tenn.Code Ann. § 29–28–103; and (3) is barred because Industries is entitled to workers compensation immunity as an "employer" by virtue of its status as the parent of its wholly-owned subsidiary, Excel of Tennessee.

For the reasons stated below, the Court decides the first of these issues against Industries. To the extent plaintiffs make any claim against defendant in any capacity as a manufacturer of the products in question, however, the Court does grant summary judgment to defendant on that limited ground. Finally, the Court reserves until trial a decision on the question of workers compensation exclusivity.

## I. Safety Inspection

Plaintiffs assert that Industries "assumed the role of safety advisor and consultant" to its subsidiary by conducting safety inspections but then failing to see that a proper program was established, including maintenance of devices, remedies of hazards, and education of workers. The plaintiffs' theory, thus, is that (1) defendant undertook a duty to monitor safety in the Lawrenceburg plant; (2) defendant discharged that duty negligently both by its conduct of the inspections and by its failure to see that its subsidiary put into effect certain followup measures that were reasonably required as the result of a competent safety inspection; and (3) that this failure was a proximate cause of plaintiffs' injuries.

■ The parties agree that this theory, if established in fact and sound as a matter of law, would require the application of the Restatement (Second) of Torts § 324A. That section states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third per-

son or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [1] (sic) his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

As defendant points out, no Tennessee court has expressly adopted the "Good Samaritan" doctrine enunciated in the Restatement's §§ 323 and 324A. See Moody v. United States, 774 F.2d 150, 155–56 (6th Cir.1985). However, the general principle inherent in the Restatement sections was endorsed as "ancient learning" in Nidiffer v. Clinchfield Railroad Co., 600 S.W.2d 242, 246 (Tenn.App.1980), and two federal courts post-Nidiffer have used the Restatement "Good Samaritan" sections in Federal Tort Claim Act cases employing Tennessee law. See Lemar v. United States, 580 F.Supp. 37, 39–40 (W.D.Tenn.1984); Neal v. Bergland, 646 F.2d 1178 (6th Cir.1981), aff'd sub nom. Block v. Neal, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).[2]

This Court agrees with Judge McRae's reading of Nidiffer that, "faced with a situation similar to this case, a Tennessee court would apply the Restatement formulation." Lemar, 580 F.Supp. at 40. The Good Samaritan doctrine is well established in American law, as the Nidiffer court recognized when it cited as authority for its views both Judge Cordozo and Dean Prosser. 600 S.W.2d at 246 (citing Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (1922); W. Prosser, Law of Torts § 56 (4th ed. 1971)); see also Indian Towing, Inc. v. United States, 350 U.S. 61, 64–65, 76 S.Ct.

---

**1.** The word "protect" apparently is a typographical error and should be "perform." See Hill v. United States Fidelity & Guaranty Co., 428 F.2d 112, 115 n. 2 (5th Cir.1970).

**2.** In Neal, however, although the Sixth Circuit applied section 323 to hold that plaintiff's claim was legally sufficient, it made no specific finding "that Tennessee law recognizes this doctrine." See Neal, 460 U.S. at 294 n. 3, 103 S.Ct. at 192 n. 3; see also Moody, 774 F.2d at 155 n. 7.

122, 124, 100 L.Ed. 48 (1955) (Good Samaritan doctrine "hornbook tort law").

Defendant further argues that, even if the Tennessee courts would recognize the principles of section 324A, the facts of this case do not state a claim under this theory.

In affidavits submitted by employees of Industries and of its subsidiary, defendant acknowledged that one of its employees reviewed safety programs and records, conducted safety audits, and participated in safety inspection tours of the Lawrenceburg plant along with a representative of the companies' common insurer. This employee also received copies of reports sent by the insurer to the subsidiary that apparently suggested changes in safety procedures. *See* Affidavit of Kenneth P. Nemes, Jan. 9, 1987, at 3–4. Mr. Nemes further acknowledges that

> In my plant visits, I was attempting to check and see if Excel of Tennessee, Inc. had implemented [ ] a safety policy [designed to minimize press injuries] and had made reasonable efforts to see that the safety practices they employed were continued on a routine basis.... If any safety procedures were not being followed or documented, the subsidiary corporation was advised of this so they could implement the appropriate program.

*Id.* at 2–3.

Notwithstanding these descriptions, defendant's affidavits further elaborate that the Lawrenceburg safety program "was administered entirely on a local basis" by the Tennessee subsidiary, Affidavit of Joel William Mow at 3, that Industries never "undertook to manage the safety program" of the subsidiary, Nemes affidavit at 3, that the subsidiary did not "require" safety

inspections by the parent, Affidavit of Robert Pabreza at 3, and that "all responsibility for maintaining the presses in a safe condition and for placing the presses in a safe condition rested with Excel of Tennessee, Inc." Nemes affidavit at 3.

Therefore, defendant argues, plaintiff cannot state a claim under any of the three alternative subparts of section 324A.[3] The Court disagrees.

■ First, defendant argues, plaintiff cannot prevail under subpart (a) because inaction[4] by Industries could not "increase the risk of harm" to plaintiffs but at most would leave that risk constant. The Court observes, at the outset, that inaction is not inevitably associated with a *constant* risk of harm. If safety conditions were deteriorating, for example, inaction could occur in the face of an increasing risk of harm. Moreover, inaction could occur over a period of time in which the absolute risk of harm might be constant, but the risk relative to that level of safety which might be achieved using state-of-the-art equipment or procedures was in fact increasing. Inaction by a safety inspector might also lull the person primarily responsible for safety into a sense that minimum standards were being met, result in less diligent safety monitoring by the primary actor, and thereby cause an increase in the risk of harm.

Put at its simplest, defendant's argument that inaction inevitably leaves the risk of harm constant ignores the possibility that, had defendant made positive recommendations to its subsidiary that were acted upon by the subsidiary, plaintiffs' risk of cumulative exposure to an existing risk might have been lessened. Notwithstanding defendant's citation of older cases to the contrary, the modern view is that failure to

---

**3.** Defendant cannot realistically argue that it did not "undertake" to render services within the meaning of section 324A's main text, because Mr. Nemes' affidavit establishes that his audits and tours encompassed both the entire plant and the presses. *See Patentas v. United States*, 687 F.2d 707, 716 (3d Cir.1982) ("undertaking" requirement met when defendant inspects either entire plant or specific instrument causing the injury).

**4.** By "inaction" the Court means "no recommendations," not nonfeasance. Obviously, defendant here is accused of misfeasance, not nonfeasance. Industries undertook inspections and other safety checks and evidently approved the program as administered by its subsidiary, *i.e.,* it made no recommendations for change. Had Industries *not undertaken* any inspections, *see supra* note 3, then it could have no liability under section 324A regardless of changes in the risk of harm or of reliance by the plaintiffs.

perform a safety inspection adequately, otherwise characterized as an "omission" or "inaction," is nonetheless affirmative misconduct. *See Ember v. B.F.D., Inc.*, 490 N.E.2d 764, 770–71 (Ind.App.1986); *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093, 1098–99 (1986).

■ Subpart (b) of section 324A imposes liability on one who has undertaken to perform "a duty owed by the other to a third person." Defendant argues that it may be liable under this subpart only if it supplanted, not merely supplemented, its subsidiary's duty to inspect, citing *Ricci v. Quality Bakers of America Cooperative, Inc.*, 556 F.Supp. 716 (D.Del.1983), and only if its conduct was intended exclusively, or at least primarily, to render services for the benefit of either the subsidiary or its employees, citing *Rick v. RLC Corp.*, 535 F.Supp. 39 (E.D.Mich.1981) and *Philadelphia Manufacturers Mutual Insurance Co. v. Gulf Forge Co.*, 555 F.Supp. 519 (S.D.Tex.1982). *See also Smith v. Allendale Mutual Insurance Co.*, 410 Mich. 685, 303 N.W.2d 702 (1981) (requiring that services be at least *primarily* intended to benefit others).

The Court finds the *Smith* case to be well-reasoned, and to establish an appropriate standard by which to assess liability under this subpart.[5] Whether Industries undertook its role as safety supervisor primarily in its own interest and not primarily for the benefit of either its subsidiary or its subsidiary's employees is a factual question not necessarily concluded by the affidavits the defendant has submitted. On this issue, the Court cannot say that Industries is entitled to judgment as a matter of law.

■ Third, defendant submits that it cannot be held liable under subpart (c) of section 324A because the Mow and Pabreza affidavits conclusively establish that the subsidiary did not rely on the parent's safety inspections. The Court rejects this argument for two reasons: first, the affidavits are conclusory and insufficient to establish the factual defense of lack of reliance as a matter of law; and second, the affidavits do not negative an assertion that the plaintiffs relied upon the parents' inspections as some assurance that safety standards were met. *See* Complaint, ¶ 5; *Johnson v. Abbe Engineering Co.*, 749 F.2d 1131, 1133–34 (5th Cir.1984).

On all three subparts, thus, the Court finds that defendants have not satisfied the initial showing required of them by rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 91 L.Ed.2d 265, 274 (1986).

## II. *Statute of Repose*

■ Defendant argues that the plaintiffs' entire case against them is barred by the product liability statute of repose, which states in relevant part:

> Any action against *a manufacturer or seller of a product* for injury to person or property caused by its defective or unreasonably dangerous condition must be brought ... in any event, ... within ten (10) years from the date on which the product was first purchased for use or consumption, or within one (1) year after the expiration of the anticipated life of the product, whichever is the shorter....

Tenn.Code Ann. § 29–28–103 (emphasis added).

Defendant cites the definition of a "product liability action" in Tenn.Code Ann. § 29–28–102(6), which includes "all actions" brought for personal injuries resulting from, *inter alia*, "construction, ... assembly, testing, service ... [or] instruction" concerning any product, and includes actions based on theories of "negligence." This language, according to defendant, indicates that the adjacent limitation-of-actions section must be applied to all plaintiffs' theories against Industries because they allege theories of negligence involving the construction, assembly, testing, service and instruction provided about the presses and related safety devices.

---

5. The Court emphasizes that the primary purpose requirement applies only to liability under the alternative of subpart (b) and not to the definition of undertaking or of services in the main text of section 324A. *See supra* note 3.

The Court rejects this reasoning in part. By its terms, the ten-year limitation period of section 29–28–103 applies not to "product liability actions" but rather to "any action against a manufacturer or seller." Plaintiff's Restatement section 324A theory against Industries is not based on any actions defendant took in a role as "manufacturer" or "seller."

These two terms are defined in relevant part as follows:

As used in this chapter unless the context otherwise requires:

.        .        .        .        .

(4) "Manufacturer" means the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts.

.        .        .        .        .

(7) "Seller" shall include a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption.

Tenn.Code Ann. § 29–28–102(4), (6).

Plaintiffs' "Good Samaritan" claim sounds against Industry in its role as safety inspector, a role encompassed in the statutory definition of neither "manufacturer" nor of "seller." Section 29–28–103, thus, does not apply.

■ The Court agrees with defendant, however, that plaintiffs' claims which relate to Industries' role in designing, fabricating, or assembling the safety apparatus attached to the presses are barred by section 103. To that extent only, the court grants defendant's motion for summary judgment pursuant to Tenn.Code Ann. § 29–28–103. *See* Complaint ¶¶ 5, 6, 8.

### III. *Workers Compensation Immunity for a Parent Corporation*

Defendant finally argues that, as the parent corporation of Excel of Tennessee, it should likewise be accorded the status of "employer" for purposes of workers compensation statutory immunity. Tenn.Code Ann. §§ 50–6–102, 103, 108. As a general rule, whether an employee of a subsidiary corporation may sue the subsidiary's parent free of a workers compensation exclusivity bar is not a settled issue. There is no articulated view in the state courts of Tennessee, although one federal district court has addressed the issue. *See Latham v. Technar, Inc.*, 390 F.Supp. 1031, 1037 (E.D.Tenn.1974), which held that a parent would share a subsidiary's immunity only if "the two ... concerns were so completely integrated and commingled that neither party could be realistically viewed as a separate economic entity."

The majority view in other jurisdictions, however, is that generally a separate parent corporation is not entitled to share a subsidiary's immunity. *See* 2A A. Larson, *The Law of Workmen's Compensation*, § 72.40; Annot., 30 A.L.R. 4th 948. The Sixth Circuit, in the leading case of *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.1978), *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979), held that Kentucky law would not immunize a parent corporation from "tort liability to its subsidiary employees for its own, independent acts of negligence." *Id.* at 663. The court based its decision on (1) a recognition that the immunity doctrine must be interpreted in light of the modern trend toward corporate concentration, and on (2) an insistence that a corporation that creates a separate corporate existence for some legal benefit should not lightly be allowed to escape some corresponding burdens:

[A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee.

*Id.* at 662. *See also Peterson v. Trailways, Inc.*, 555 F.Supp. 827 (D.Colo.1983).

The minority view has been articulated by state courts in Louisiana, Georgia, Michigan, and Florida. The Florida Supreme Court, however, recently resolved a divi-

sion of authority in the opinions of its intermediate appellate courts by adopting the majority approach. *See Gulfstream Land & Development Corp. v. Wilkerson*, 420 So.2d 587 (Fla.1982); Larson, *supra*, § 72.40 n. 28 Supp.

■ Apart from its prominence as a leading case that has been widely cited by courts in other jurisdictions which have adopted its rationale, *Boggs v. Blue Diamond, supra*, of course, cannot be accorded controlling deference in this case. In *Boggs* the Sixth Circuit construed the Kentucky workers compensation statutes; this case concerns Tennessee statutes. In the absence of state court precedent, dealing directly with the parent-subsidiary issue, this Court must be guided by its best estimate of what the Tennessee Supreme Court would do were it confronted with this question. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1938). In that inquiry the Court may rely upon, *inter alia*, analogous cases and relevant dicta in the decisional law of the state's highest court, opinions of the state's intermediate appellate court to the extent they are persuasive indicia of state supreme court direction, and persuasive opinions from other jurisdictions, including the "majority rule." *See Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985); C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4507.

After careful consideration of the issue, this Court concludes that (1) the Tennessee courts would be unlikely to adopt a *per se* rule [6] that any parent corporation automatically would share in its subsidiary's statutory immunity as an employer, and (2) that the facts on this issue in this case are insufficiently developed to warrant summary judgment.

■ The Tennessee courts always have viewed workers compensation exclusivity both as elective and as reciprocally grounded in the contractual employer-employee relationship. *See McAlister v. Methodist Hospital*, 550 S.W.2d 240, 241–42 (Tenn.

1977); *Hammett v. Vogue, Inc.*, 179 Tenn. 284, 165 S.W.2d 577 (1942). Absent the existence of an express statutory exception, Tennessee courts have been reluctant to grant tort immunity to a party who is not at least potentially liable to pay for an employee's injuries under the compensation scheme. *See Olsen v. Sharpe*, 191 Tenn. 503, 235 S.W.2d 11 (1950); *Posey v. Union Carbide Corp.*, 510 F.Supp. 1143, 1144–45 (M.D.Tenn.1981), *aff'd*, 705 F.2d 833 (6th Cir.1983); *cf. Perry v. Transamerica Insurance Group*, 703 S.W.2d 151 (Tenn.App. 1985) (workers comp insurer considered "employer" by operation of statute).

Because the workers compensation statutes operate as a legislative derogation of otherwise existent common-law rights and duties, the courts have construed the statutes strictly. *See Liberty Mutual Insurance Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760, 762 (1963); *Perry, supra*, 703 S.W.2d at 154–55. Moreover, the state courts have consistently declined to extend the scope of exclusivity beyond the *quid pro quo* expressly created by the legislature and accepted by the parties. *See Olsen, supra*, 235 S.W.2d at 12; *Mullican v. Home Stores*, 197 Tenn. 93, 270 S.W.2d 372 (1954); *Hill v. King*, 663 S.W.2d 435, 444 (Tenn.App.1983); *Posey, supra*, 510 F.Supp. at 1145.

The Tennessee courts, like courts in virtually all jurisdictions, do not lightly disregard the separate existence of a corporate entity. Generally, as in other jurisdictions, to disregard corporate separateness there must be a failure to observe corporate formalities, the use of a technically separate entity as a fraud or sham, a failure of separate identity manifest by gross commingling of funds, or the satisfaction of a rigorous test that one corporation was a "mere instrumentality" of the other. *See Continental Bankers Life Insurance Co. v. Bank of Alamo*, 578 S.W.2d 625 (Tenn. 1979); *Neese v. Fireman's Fund Insurance Co.*, 53 Tenn.App. 710, 386 S.W.2d 918, *cert. denied, id.* (Tenn.1964). Nor

---

**6.** The Court does assume that Tennessee, like other jurisdictions, would bar a claim against a parent corporation directed solely against the parent's status as (100%) shareholder of the subsidiary. *See* 2A Larson, *supra*, § 72.13.

have corporations which have "deliberately undertaken to do business in corporate form, for tax purposes, accounting and other reasons" been permitted to "shunt aside *at their convenience* legal entities and the legal aspects thereof." *Shelby County v. Barden,* 527 S.W.2d 124, 130 (Tenn.1975) (emphasis added).

In Tennessee, a party seeking to defend a so-called "third-party" common law tort action on the grounds that it is entitled to immunity as a workers compensation employer bears the burden of proof on that issue. *See Watson v. Borg-Warner Corp.,* 190 Tenn. 209, 228 S.W.2d 1011, 1014 (1950); *Pikeville Fuel Co. v. Marsh,* 34 Tenn.App. 82, 232 S.W.2d 789, 793 (1948), *cert. denied, id.* (Tenn.1949).

■ Industries has submitted by affidavits evidence that it is a holding company that owns all of the stock of several subsidiary corporations, including that of Excel of Tennessee. The subsidiary's board of directors is composed entirely of persons who also are members of Industries' board. Both parent and subsidiary are covered by the same workers compensation and general liability insurer. Industries provides the pension plan for employees, which allows aggregation of time spent working for the parent or any of its subsidiaries. Industries manages sales, accounting, personnel engineering, and other support functions; the subsidiaries are engaged in manufacturing operations. Gross receipts from a subsidiary are deposited to the account of the parent, and payroll monies are transferred to a subsidiary from the parent. Affidavit of Kenneth P. Nemes, Aug. 28, 1986, at 1–4.

While these relationships create a substantial amount of integration and common purpose between the parent and its Tennessee subsidiary, the Court does not view this showing alone as sufficient to require the piercing of the corporate veil that Indus-

tries seeks. While common ownership, identity of management, and the presence of a common insurer may be indicia of an identity between two corporations, generally these factors alone are not enough to warrant merger of the two for compensation purposes. *See* 2A Larson, *supra,* § 72.40 at 14–191; *Latham,* 390 F.Supp. at 1037. The critical issue in most courts' view is whether the parent *controls*[7] the subsidiary. *See* 2A Larson, *supra,* § 72.40 n. 34.

In this respect, Industries' affidavits prove too much. They acknowledge a clear separation in the functions of the two corporations; moreover, in the attempt to show that plaintiffs have not stated a claim under Restatement § 324A, *supra,* Industries' affidavits openly state that the parent left responsibility for safety operations at the Lawrenceburg plant to the subsidiary and did not "undertake to control the safety programs." Nemes affidavit of Aug. 28, 1986, at 2–3; Pabreza affidavit at 3; Mow affidavit at 3–4. This functional independence between the two corporations appears also to fall short of that "complete dominion" required by the Tennessee courts in other contexts to justify a conclusion that a subsidiary corporation is a mere "instrumentality" with "no separate mind, will or existence of its own." *Continental Bankers Life Insurance Co. v. Bank of Alamo,* 578 S.W.2d at 632.

The Court concludes that, if the Tennessee courts would recognize workers compensation identity of parent and subsidiary corporations under certain circumstances, Industries has failed to make a sufficient factual showing to warrant summary judgment on this issue.[8] There has been no showing that the plaintiffs or other employees had any recognition that they were entering into a *quid pro quo* with the parent, an insufficient showing of corporate

---

**7.** Of course, if a parent's control extended so far as to control the details of a subsidiary's employees' performance, then an employer-employee relationship would be deemed to arise between the parent and the subsidiary's employees. *See Lindsey v. Smith & Johnson, Inc.,* 601 S.W.2d 923, 925 (Tenn.1980). Defendant here, however, has alleged this type of control neither over the subsidiary's operations-level employees nor over its safety supervisors.

**8.** *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, 213 (1986); *Celotex Corp. v. Catrett, supra.*

domination and control, and a troubling inconsistency between defendant's rather conclusory factual assertions on this issue and on the tort duty issue. The Court concludes that the issue of workers compensation exclusivity is best reserved for later proceedings, where the legal issue can be assessed against a factual background more fully developed by discovery and by effective cross examination.

For the reasons stated above, defendant's motions for summary judgment are denied, except for that portion which seeks dismissal of claims against it as a "manufacturer" of a product pursuant to Tenn. Code Ann. 29–28–102(4), which is granted, and that portion which seeks judgment on the issue of workers compensation exclusivity, which is reserved.