GEHL CORPORATION,              )
                                                    )

       Plaintiff/Appellant,       )      Appeal No.
                                                    )      01-A-01-9803-CH-00165
v.                                    )
                                                      )      Davidson Chancery
RUTH E. JOHNSON,          )      No.  95-3343-III
Commissioner of Revenue for the   )
State of Tennessee,           )
                                                      )
       Defendant/Appellee.     )

FILED

December 4, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE DAVIDSON COUNTY CHANCERY COURT

AT  NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

WILLIAM H.D. FONES, JR.
JANIS WILD KESSER
Baker, Donelson, Bearman & Caldwell
2000 First Tennessee  Building
Memphis, Tennessee  38103
        ATTORNEYS FOR PLAINTIFF/APPELLANT

JOHN KNOX WALKUP
Attorney General & Reporter

STACY E. GIBSON
425 Fifth Avenue North
Cordell Hull Building, Second Floor
Nashville, Tennessee  37243-0489
        ATTORNEYSFOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

Gehl Corporation filed suit in the Chancery Court of Davidson County to contest an assessment by the Commissioner of Revenue of the "Amusement Tax" imposed by Tennessee Code Annotated section 67-6-212(a)(2).

Gehl received a notice of assessment dated July 20, 1995 notifying it that it had been assessed for sales and use taxes for the period December, 1990 through September, 1994. Gehl chose not to pay this assessment and filed suit pursuant to Tennessee Code Annotated section 67-1-1801 requesting the court to set aside the assessment. At issue is an assessment for tax in the amount of $361,795.00, together with penalty and interest totaling $557,231.00 as of July 20, 1995.

The Gehl Corporation engages in two major activities in Tennessee. In addition to promoting and organizing tours for several Country Music stars, The Gehl Corporation entered into contracts with the Memphis Firefighters' Association, Nashville Firefighters Association and Clarksville Professional Firefighters, regarding benefit concerts. The record reveals that the contracts executed by the representatives of the three firefighters' associations (denominated in the agreements as "COMMITTEE") and Gehl (denominated in the agreements as "SHOW") are substantially similar.

The associations and Gehl, in an attempt to raise money for the association and to earn a profit for Gehl, arranged to put on a number of benefit concerts on behalf of the association. As an example, the contract with the Memphis Firefighters Association states in pertinent part:

> 2. The COMMITTEE hereby grants and extends to the SHOW the use of its good name, goodwill and cooperation to stimulate the sale of tickets and advertising and its complete cooperation in presenting six (6) fund raising events, ... .
>
> 3. The SHOW agrees to provide a campaign manager who shall direct a campaign for the sale of admission tickets and advertisements in connection with the above-mentioned attraction. All sales work, in connection herewith, shall be done by sales manager and/or his employees and shall be done by letter, personal

contact or telephone.

4. Said campaign manager shall receive forty percent (40%) (gross) of the monies derived from his sales and/or the sales of his employees. Said percentage shall be paid to the campaign manager weekly, but shall only be paid on monies collected and deposited with the COMMITTEE. Said percentage shall be compensation in full for his services and the services of everyone employed by the campaign manager.

. . .

5. Campaign manager shall assume, in full, that portion of the campaign operating costs which specifically includes the following items: Office personnel, sales personnel and delivery personnel.

a) All monies collected from any source whatsoever under the terms of this Agreement shall be made payable to the COMMITTEE, and shall be mailed or delivered each week during the continuance of this Agreement to the duly appointed officer of the COMMITTEE.

b) All monies collected are to be deposited in a special checking account in a bank of COMMITTEE's choice. It will be necessary to have two (2) signatures on all checks disbursed, one from the COMMITTEE and one representing the SHOW.

6. All costs incurred in connection with the fulfillment of the terms of this Agreement shall be paid out of the monies grossed and said costs shall be paid in full, prior to the division of profits according to the terms herein stated. Said costs shall consist of the following:

a) The cost of the attraction shall be actual.

b) Additional expenses shall be: Office rental, telephone service, liability insurance, printing, rental costs of the theatre[sic] or auditorium, postage, and any other costs directly related to and incurred under the terms of this agreement.

. . .

7. After all costs, as outlined above, have been paid and after sales taxes have been paid, the amount remaining shall be the net profit and shall be divided as follows:

a) The COMMITTEE shall receive the first Twenty Thousand Dollars ($20,000.00) of the net profit per event, and the SHOW shall receive the next ($20,000.00) of the net profit, per event.

b) All additional monies shall be divided equally fifty percent (50%) [to] the COMMITTEE and fifty percent (50%) to the SHOW.

. . .

9.     Should a deficit occur as a result of this agreement, SHOW agrees to assume all responsibility for the payment of all liabilities incurred and COMMITTEE shall in no way whatsoever be liable for same.

Gehl would appoint the campaign manager, whose job it was to solicit, primarily by phone, the purchase of tickets for the charity events presented on behalf of the associations.

In the action below challenging that assessment, both Gehl Corporation and the Commissioner filed motions for summary judgment. Gehl Corporation comes to us to review Chancellor Lyle's order granting summary judgment for the Commissioner and denying Gehl Corp.'s cross-motion. Our standard of review in this case is accordingly de novo with no presumption of the correctness of the trial court action. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991) and *Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996).

Gehl Corp. urges the following issues on appeal:

1.     Whether the trial court erred in denying Gehl's Motion for Summary Judgment by finding that Gehl was a taxpayer and not an agent of the firefighters.

2.     Whether the trial court erred by finding that the proceeds of the ticket sales to concerts presented pursuant to agreements with non-profit labor organizations were not exempt from the amusement tax pursuant to T.C.A. § 67-6-330 (a) (7) and/or (16).

3.     Whether the trial court erred by finding that the proceeds of the ticket sales were taxable admissions.

## I. Agency

Gehl's first two issues hinge on the main question of whether or not Gehl Corp. was an agent of the charitable firefighter organizations. If Gehl was indeed acting as an agent, then the entity conducting the ticket sales was actually the Nashville, Memphis and Clarksville Firefighters' Associations respectively. In addition, if Gehl was acting under the direction of these associations in producing, promoting and controlling these concerts, then the charitable organizations are the principals. In any event, should agency exist, then no tax

is owed on the proceeds from these ticket sales.

Two universal rules of agency appear with regularity in the cases of our jurisdiction. The first recognizes the element of benefit to the principal of the agency relationship. In an agency relationship, the agent carries on a business for the benefit of its principal. ***See e.g. Nidiffer v. Clinchfield R. Co.***, 600 S.W.2d 242, 245 (Tenn. App. 1980); ***Jack Daniel Distillery, Lem Motlow Prop. v. Jackson***, 740 S.W.2d 413, 416 (Tenn. 1987). The second rule, and the most significant rule for the case at bar, is stated most succinctly by Judge Franks, writing for the Eastern Section in *Nidiffer*:

> ...[T]he principal test of agency is whether the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent. It is said this right of control is the primary or the essential test of an agency relationship without which no agency exists. 2A C.J.S. *Agency* § 6, at 560 through 561. *Accord:* 3 Am.Jur.2d, *Agency*, § 2.

> ***Nidiffer v. Clinchfield R. Co.***, 600 S.W.2d 242, 245 (Tenn. App. 1980)

The record reveals no such right of control on the part of the firefighters' associations. With regard to the sales of tickets, Gehl was in charge of the selection of a campaign manager. We find the depositions of Firefighter Danny Todd and Fire Captain Billie Hall enlightening as to the supposed right of the associations to control Gehl's fundraising activities. Firefighter Todd represents the Memphis Firefighters Association; Captain Hall represents the Nashville Firefighters Association. With regard to the campaign manager, Firefighter Todd stated in his deposition as follows:

> Q.    Have you had involvement in the hiring or firing of campaign managers?

> A.    I guess definition of involvement, but had discussions about different managers over the years and, you know, who was coming or more importantly when it was time to make a change in Show Fund managers I've had some discussions and input into when a change was made with the supervisors and the other employees of -- the owners of the Gehl Group.

Captain Hall had this to say regarding the selection of a campaign manager:

> Q.    And who did you work with from The Gehl Corporation?

A.	There have been several individuals over the years. I've worked with Frank Stevens. I've worked directly with Joe Gehl at times. One time it was a gentleman, Forrest Ferguson. The gentleman that's there now, I've worked briefly with. I think his name is Tom, if I'm not mistaken.

. . .

Q.	...The individuals you mentioned just a minute ago, were they the campaign managers hired by Gehl, or were they other individuals?

A.	Of course, Gehl owns the business. Frank Stevens is a partner or something in the business. He's not a campaign manager. Forrest Ferguson was the campaign manager, and Tom is the campaign manager that runs the show fund office.

Q.	Do they generally hire a separate campaign manager every year? How does that work? How often does that change?

A.	Probably, it's been more stable now than it has in the past. At one time, it was not very stable. We were more or less designated, for some reason -- I have no reason to be a trainer for managers or whatever. That caused us various problems, and we told them that we didn't like that arrangement, that we wanted someone that we could have a relationship with, you know, that we knew on a day-in and day-out basis.

Q.	Let me make sure I understand. You were getting several different managers because you were kind of a training ground; a person would learn in Nashville and then move on?

A.	Right. If it was a good manager consequently -- we knew he was going to move on whether he was good, bad, or in between. We didn't like that particular relationship.

Q.	You said you expressed that to Gehl?

A.	The Gehl Group, yes, ma'am.

Q.	Did they change their policy on that?

A.	Yes, ma'am. I think probably since then we've probably had two managers, maybe an interim manager between one or the other but basically two managers.

Q.	Are the fire fighters involved at all in choosing a manager?

A.	We have approval, you know. If it is someone that, for some reason, we just didn't get along with gee-haw with or whatever, they would have to go.

The testimony of these witnesses taken as a whole fails to estsablish any right of control on the part of the firefighters' associations. These campaign managers, chosen by Gehl subject to the approval from the charitable associations, were in charge of the solicitation of ticket sales by other employees of Gehl.

Concerning the actual production and direction of the concerts, the associations relied on Gehl's expertise in this area as well. The leasing of the auditoriums, contracts for lighting and sound, negotiation with the acts involved, all of these activities were undertaken by Gehl. The record regarding the parties conduct shows no evidence of the control required for Gehl to be considered an agent of the associations.

Both Gehl and the Commissioner refer us to our previous decision in *Raskin Co. v. Johnson*, 1998 WL 24260 (May 15, 1998). For the reasons articulated above, we find the case at bar distinguished on its facts. In *Raskin*, the City exercised control over personnel, food-service, green fees on land owned by it and operated by the Raskin Company. These items are classic indicia of control by a principal over an agent's duties. Whereas the Municipality suffered the risk of loss attendant to having an agent manage its real property, the firefighters associations in the case at bar bore no risk of loss.

In sum, this situation falls under the application of the rules of agency set forth in *United States v. Boyd*, 211 Tenn. 139, 363 S.W.2d 193 (1962). In *Boyd*, several subcontractors of the Atomic Energy Commission of the United States were seeking to avoid tax liability by virtue of a supposed agency relationship with the federal government. The contractors were assessed sales tax on items purchased for the benefit of the government as well as use tax assessed on equipment utilized by the subcontractors themselves. In determining the question of agency existence for the purpose of taxing equipment, the court found that the entities involved were chosen by the government for their expertise. The contracts involved suggested that these entities would use their specialized expertise to obtain a goal for the A.E.C.. The subcontractors were left to their own devices within their relative fields of expertise. The relationship involved was purely goal-oriented. The A.E.C. had no right to control the

subcontractors within their respective fields, so no agency existed. ***United States v. Boyd***, 211 Tenn. 139, 159, 363 S.W.2d 193, 202 (1962).

The chancellor held and the record without dispute discloses:

> While the record before the court establishes that the firefighters are allowed to make requests and have input, they have no authority to fire employees or change entertainers or fire telemarketers. The stipulations filed with the court used the term "requests" or "asks" in describing the firefighters role, relationship and control with respect to Gehl Corporation. Additionally, the firefighters are not paying Gehl such as one would expect with an agent. Gehl is paid profits out of the account. Thus, Gehl has failed to carry its burden of demonstrating by clear and convincing evidence that it is the agent and not the actual entity which should be taxed.

Such is the burden that rests upon the taxpayer. ***Edmonson Management Services, Inc. v. Woods***, 603 S.W.2d 716 (Tenn. 1980) and ***Stratton v. Jackson***, 707 S.W.2d 865 (Tenn. 1986).

## II. Exemption under T.C.A. § 67-6-330(a)(7) or (16)

There is exempt from the sales tax upon admission, dues or fees imposed by § 67-6-212 [Amusement Tax]:

> (7) Gross proceeds derived from admissions to amusement or recreational activities or facilities conducted, produced or provided by:

> (C) Organizations listed in Major Group No. 86 of the Standard Industrial Classification Manual of 1972, as amended, prepared by the office of management and budget by the federal government; provided that this exemption shall not apply unless such entities, societies, associations or organizations promote, produce and control the entire production or function; . . .

Further, T.C.A. § 67-6-330(16) also exempts:

> Gross proceeds derived from admissions to musical concerts conducted, produced or provided by not-for-profit community group associations if such associations promote, produce and control such concerts; . . .

It is indisputable that Gehl does not qualify for exempt status under these statutory provisions as it is neither a Major Group No. 86 organization nor the agent of such an organization.

Such exemptions are strictly construed against the taxpayer. *Tibbals Flooring v. Huddleston*, 891 S.W.2d 196, 198 (Tenn. 1994).

As demonstrated in the authorities cited above, summary judgment in favor of the Commissioner on the issue of agency was proper. While it is true that courts may look beyond the four corners of agreements with third parties to determine the supposed agency status of the taxpayer, *Boyd supra*; in the case at bar, such investigation only proves to reinforce the impression established by the contracts in question. Gehl was not an agent, but rather a purchaser of good will and sponsorship.

## III.  Tickets as Donations

The last issue Gehl raises on appeal questions the nature of the actual ticket sales. Gehl of course contends that at least a portion of these ticket purchases represent pure donation. Without discussing the portion of tickets used, the fact remains that individuals in Clarksville, Memphis and Nashville have given money and received in exchange therefor the right to admission to the concerts promoted in their respective city. While the odds on every ticket-holder exercising this right at the same time are slight; in truth, every person successfully solicited for a ticket has purchased a right, and that purchase is taxable under Tennessee Code Annotated section 67-6-212(a)(2).

> **67-6-212. Amusement tax. --** (a) There is levied a tax at a rate equal to the rate of tax levied on the sale of tangible personal property at retail by the provisions of § 67-6-202 of the gross receipts or gross proceeds of each sale at retail of the following:
> . . .
> (2) Sales of tickets, fees or other charges made for admission to or voluntary contributions made to places of amusement, sports, entertainment, exhibition, display or other recreational events or activities, including free or complimentary admissions when made in connection with a valuable contribution to any organization or establishment holding or sponsoring such activities which shall have the value equivalent to the charge that would have otherwise been made;

Tenn. Code Ann. § 67-6-212 (1998).

## IV.  Disposition

The order of the chancellor granting summary judgment in favor of the

commissioner is affirmed in all respects. The cause is remanded to the trial court for proceedings pursuant to Tennessee Code Annotated section 67-1-1803(d) and such further action as may be necessary. Costs of the appeal are taxed against Gehl Corporation.

_____

WILLIAM B. CAIN, JUDGE

CONCUR:

_____

BEN H. CANTRELL, PRES. JUDGE, M.S.

_____

HENRY F. TODD, JUDGE