# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

February 1, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

CARL SCOTT and ALMA
SCOTT,

     Plaintiffs-Appellants,

Vs.

ROGERS GROUP, INC.,

     Defendant-Appellee.

Davidson Circuit No. 98C-1624
C.A. No. M1999-00048-COA-R3-CV

FROM THE DAVIDSON COUNTY CIRCUIT COURT
THE HONORABLE BARBARA N. HAYNES, JUDGE

Mitchell G. Tollison; Lesa B. Rainwater
Hawks & Tollison of Humboldt
For Plaintiffs-Appellants

W. Lee Corbett; David F. Lewis of Nashville
For Defendant-Appellee

## AFFIRMED AND REMANDED

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

ALAN E. HIGHERS, JUDGE

DAVID R. FARMER, JUDGE

This is a case involving breach of contract. Plaintiffs/appellants, Carl Scott and Alma Scott (referred to herein as "the Scotts") appeal from the order of the trial court granting summary judgment to defendant/appellee, Rogers Group, Inc.

The Scotts' complaint, filed June 15, 1998, alleges that Carl Scott was an employee of the defendant from 1979 to 1989, and during that time he purchased optional life insurance coverage under Group Policy GL-14076, for himself and his wife, Alma. They aver that on his retirement, the Rogers Group offered him the opportunity to continue the optional life insurance coverage with no increase in premiums. Plaintiffs allege that they mailed the premiums to Rogers Group as required for the continuing coverage under the life insurance policy. The complaint further alleges:

> 10. That Plaintiffs and Rogers Group, Inc. thus had an enforceable and binding contract, upon the mailing of the first premium to Rogers Group, Inc., to continue Plaintiffs' life insurance coverage as long as Plaintiffs desired and with no increase in premiums.
>
> 11. That Rogers Group, Inc. breached this contract by failing to fulfill it's obligations of continuing life insurance coverage to Plaintiffs at no increase in premiums for as long as Plaintiffs desired by demanding an increase in premiums from Plaintiffs and subsequently canceling Plaintiffs' coverage when Plaintiffs were unable to pay the increased premiums.

The complaint also alleges an action pursuant to the Employee Retirement Income Security Act (ERISA) and the Tennessee Consumer Protection Act. However, in response to defendant's motion for summary judgment, the Scotts conceded that these actions were not viable, and they have made no argument on appeal concerning them.

Defendant's answer avers that the Scotts had the opportunity to purchase the optional life insurance coverage and admits that they mailed the premium for the optional life insurance coverage to defendant. The answer denies the allegations that there was a contract between the Scotts and defendant and joins issue on the remaining allegations.

The undisputed facts of this case are as follows: Carl Scott was employed by Rogers Group, Inc., in Humboldt, Tennessee, from September 1979 to August 1989. While he was employed by Rogers Group, Mr. Scott purchased optional life insurance for himself and his wife from CIGNA. The CIGNA group policy was administered by Rogers Group. Rogers Group sent all participating employees a certificate evidencing the optional CIGNA policy, each participant was given a presentation explaining the policy, and each participant was provided a booklet. Monthly premiums were paid by

a check to Rogers Group by each employee opting for coverage. Upon receiving the employees' payments, Rogers Group remitted one payment to CIGNA to cover the premiums of all participants. Rogers Group made no payment of any part of the premium, nor did Rogers Group receive any compensation from CIGNA or anyone else for administering the plan.

Mr. Scott retired from Rogers Group in August 1989. At that time, Mr. Scott was offered and accepted the option to continue the optional life insurance for both himself and Mrs. Scott. On December 23, 1994, Rogers Group sent a letter to Mr. Scott informing him that CIGNA had elected to cancel the optional life insurance policy, but that he could continue coverage through Security Life of Denver. However, under the new coverage the current premium of $53.00 per month would be increased to $120.00 per month. The letter further informed Mr. Scott that the monthly premium would increase as his age increased. Mr. Scott chose not to participate in the Security Life of Denver life insurance policy.

Rogers Group filed a motion for summary judgment supported by affidavits and a statement of material facts. The Scotts' response to Rogers Group's motion is supported by an affidavit of both plaintiffs stating that defendant promised them that they could continue coverage for the same premium for as long as they wished. The trial court granted the defendant's motion for summary judgment, and plaintiffs have appealed. The only issue for review, as stated in the Scotts' brief, is:

> [w]hether the trial court erred in granting Defendant Summary Judgment in determining whether or not a contract for the provision of insurance existed between the Plaintiff and Defendant.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of

3

material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). If the facts are uncontroverted, summary judgment is inappropriate if reasonable minds could differ as to the inferences to be drawn therefrom. *Keene v. Cracker Barrel Old County Store, Inc.*, 853 S.W2d 501 (Tenn. Ct. App. 1992); *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. Ct. App. 1981). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The Scotts contend that Rogers Group breached a contract with them to provide the optional life insurance policy for as long as the Scotts wished with no increase in premiums. Attached to the Scotts' complaint are letters dated November 11, 1989, December 2, 1992, January 5, 1994, March 8, 1994, and September 9, 1994 from Rogers Group to Carl Scott, which read in pertinent part:

> As you know, you may continue coverage under your optional life insurance policy for as long as you wish. The premiums will not increase and all you need to do is send a check in payment of the appropriate premiums to Rogers Group, Inc.

The Scotts' affidavits state that they "refrained from their legal right to procure life insurance from some source other than Defendant because they relied upon the promise of Defendant that they could continue their life insurance for as long as they wished with no increase in premiums." They further state that because of their age, they cannot obtain comparable insurance for the same cost.

Rogers Group contends that no contractual relationship existed for providing life insurance and that Rogers Group acted at all times as a volunteer in managing the optional life insurance.

"A contract has been defined over the years as an agreement, upon sufficient consideration, to do or not to do a particular thing." *Smith v. Pickwick Electric Cooperative*, 212 Tenn. 62, 71-72, 367 S.W.2d 775, 780 (1963) (citing *Furman, Green & Co. v. Nichol*, 43 Tenn. 443, 445 (1866). An enforceable agreement requires consideration flowing to both parties. *Frank Rudy Heirs Associtaes v.Moore & Associates, Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App. 1995). A party attempting to prove the existence of a contract "is required to show that the agreement on which he

4

relies was supported by adequate consideration". *Price v. Mercury Supply Company, Inc.* 682 S.W. 2d 924, 933 (Tenn. Ct. App. 1984). "[I]n all simple contracts...whether written or verbal, the consideration must be averred and proved." *Clark v. Small*, 14 Tenn. (6 Yer.) 417, 421 (1834). *See also* 17 Am. Jur.2d *Contracts* § 125 (1965) and 17 CGS *Contracts* § 116 (1963).

The question of what constitutes consideration adequate or sufficient to support a contract has been addressed by a number of Tennessee courts. In *Palmer v. Dehn*, 29 Tenn. App. 597, 198 S.W.2d 827 (1946), the Court said:

> For there to be consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration. The jury may draw any reasonable and natural inference from the proof and if by inference from the proof a benefit to the promisor and detriment to the promisee might be inferred this will constitute a valid consideration.

29 Tenn. App. 599, 198 S.W.2d 828; *see also Trailer Conditioners, Inc. v. Huddleston*, 879 S.W.2d 728, 731 (Tenn. Ct. App. 1995); *Robinson v. Kenney*, 526 S.W.2d 115, 118-19 (Tenn. Ct. App. 1973).

In *Nidiffer v. Clinchfield Railroad Co.*, 600 S.W.2d 242 (Tenn. Ct. App. 1980), this Court considered an employer's role in connection with procuring and administering an employee's group life insurance policy. In *Nidiffer*, former employees who were notified of a substantial increase in premium payments under a group insurance policy sued their former employer alleging that the employer was the employee's agent for the purpose of obtaining and maintaining group life insurance coverage and had breached the fiduciary duties to the plaintiffs in transferring the group life insurance coverage from Prudential Insurance Company to Employee's Mutual Benefit Association. The trial court found that there was an implied and express agency relationship between the plaintiffs and their former employer in the matter of "the procurement, handling, and perpetuating the insurance in a sound and solvent insurance company." In *Nidiffer*, as in the instant case, the employer wrote a letter to the plaintiffs concerning the change in the insurance company and stated in pertinent part: "There will be no change in the amount of your insurance as a result of this transfer, nor will there be any change in your monthly premium." The trial court found that by virtue of this letter, there was an express contractual obligation between the employer and the employees and that the employer had breached the contract due to the increase in premiums. On appeal, this Court noted that there was no agency relationship between the employer, Clinchfield, and its employees or former employees because they had no control or

5

right of control over Clinchfield's action in connection with the group insurance policy. The Court also noted that unless there is some provision in the group policy contract or the certificates issued thereunder, the individual members have no vested right to continuation of the group policy. *Id.* at 246. This Court concluded that there was no contract between Clinchfield and its employees to provide insurance for the employees, but Clinchfield voluntarily secured the policy for them. Therefore, Clinchfield was charged with the duty of a volunteer, which is a duty of reasonable care if the volunteer chooses to act. *Id.* at 246.

The undisputed facts in the instant case establish that the Rogers Group merely procured and administered the insurance on behalf of the employees. There is nothing in the record to indicate that Rogers Group made any binding commitment to furnish insurance to the employee. The facts are undisputed that no consideration flowed to Rogers Group.

Rogers Group acted only as a volunteer and, thus, had the duty to act with reasonable care. *Niddifer* at 246. There is nothing in this record to indicate that there was a lack of reasonable care on the part of Rogers Group, nor is there any attempt by the Scotts to proceed on that basis. In the instant case, CIGNA's decision to terminate the group policy was undoubtedly authorized by the provisions of the group policy, but, if there is any question about whether CIGNA had the right to do so, that question should have been resolved in an action against CIGNA.

From the record before us, it is undisputed that there was no contract between Rogers Group and the Scotts. Accordingly, the judgment of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants, Carl Scott and Alma Scott.

_____
**W. FRANK CRAWFORD, P.J., W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**

6