IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 18, 2009 Session

**JAMES E. DYER, Individually, and as Administrator of the Estate of
FAYE E. DYER, Deceased
v.
HILL SERVICES PLUMBING AND HVAC**

Direct Appeal from the Chancery Court for Shelby County
No. CH-05-2304     Walter L. Evans, Chancellor

---

**No. W2009-00687-COA-R3-CV - Filed January 7, 2010**

---

This appeal arises from a dispute between Appellant employee and Appellee employer over life insurance coverage under a group insurance policy. Employee asserts that employer was negligent in failing to inform employee of his right of conversion under the insurance policy and also in its failure to obtain insurance coverage for him after he was rehired. In the alternative, employee argues that the doctrine of equitable estoppel should apply. The trial court dismissed the complaint based upon its finding that employee failed to make out a *prima facie* case for negligence, and declined to apply equitable estoppel. Finding negligence by the employer in failing to notify employee of his right to convert, we reverse the trial court's dismissal of that claim and remand for further proceedings. We affirm the decision of the trial court finding that the employer was not negligent in obtaining new insurance for the employee after he was rehired and its decision not to apply equitable estoppel.

**Tenn. R. App. P 3; Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Reversed in Part and Remanded.**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which HOLLY M. KIRBY, J., joined and DAVID R. FARMER, J., filed a separate dissenting opinion.

Reed L. Malkin and Steven R. Walker, Memphis, TN, for appellant, James E. Dyer.

Julia Beth Crews, Memphis, TN, for appellee, Hill Services, Plumbing and HVAC.

**OPINION**

This Court originally received this appeal in November 2008. After review of the record, we issued an Opinion, dismissing the appeal for lack of subject-matter jurisdiction due to the fact that the order appealed was not final at that time. ***Dyer v. Hill Services Plumbing and HVAC***, No. W2008-00619-COA-R3-CV, 2008 WL 5330428 (Tenn. Ct. App. Dec. 22, 2008). In the interest of judicial economy, we reproduce relevant facts and procedural history as set out in our previous opinion, to wit:

> In November 2004, James Dyer was hired by Hill Services Plumbing and HVAC ("Hill Services"). Mr. Dyer completed enrollment forms in conjunction with his employment for among other things, life insurance coverage for himself and his spouse, Faye Dyer. Hill Services deducted the monthly premiums for the insurance coverage from his paycheck. Mr. Dyer's employment was terminated on March 31, 2005. On May 1, 2005, Mr. Dyer was reinstated by Hill Services. When he was rehired, Hill Services deducted the insurance premiums from his paycheck as it had before. On June 25, 2005, Ms. Dyer died. Mr. Dyer then made a claim under the group life insurance policy only to be informed that he had no life insurance coverage.

> Seeking to recover the face amount ($50,000) of the lapsed insurance policy, Mr. Dyer, individually and as administrator of his wife's estate, filed a Complaint against Hill Services on December 20, 2005. The Complaint alleged that, by deducting the premiums from his paycheck, Mr. Dyer and Hill Services entered into an implied-in-fact contract under which Hill Services was required to provide life insurance for Mr. Dyer and his wife. Hill Services denied that such a contract existed.

> Although Mr. Dyer never formally amended his Complaint, he asserted, in a Memorandum in Support for Summary Judgment, two additional claims for relief not contained in the Complaint. In this pleading, Mr. Dyer asserted that he was entitled to relief under the doctrine of equitable estoppel and that Hill Services failed to give notice of the termination of insurance coverage and of his right to convert the group policy to an individual policy upon termination of

-2-

employment.[1] In response, Hill Services addressed both issues, but argued that the notice issue had not been previously alleged. On July 7, 2006, the trial court denied Mr. Dyer's summary judgment motion. The trial court did not state its reasons for the denial. Unfortunately, the requirement of Tenn. R. Civ. P. 56.04 for the trial court to state the legal grounds for denying a summary judgment motion had not yet taken effect.

Following a bench trial, an Order was entered on February 29, 2008 dismissing the Complaint. The trial court made the following specific findings:

> There was no physical evidence introduced of a contract or a life insurance policy in effect between the Plaintiff and the Defendant.

> The Defendant is not an insurance company.

> The Plaintiff did not offer documentary proof that upon rehire he was offered the same benefits he received in his prior employment with the Defendant.

> The Plaintiff was not sure that he had life insurance until after the death of his wife.

> The deductions for life insurance premiums were made from the paychecks of the Plaintiff, but that,

---

[1] In the original appeal, we noted that the life insurance policy had not been introduced into evidence and therefore did not consider the policy's evidentiary value. However, upon further review, we find that both Mr. Dyer and Hill Services attached the group life insurance policy's section on conversion to their Memorandum's of Law on Mr. Dyer's Motion for Summary Judgment. Furthermore, both parties relied on the language in the policy for their respective arguments during the Motion for Summary Judgment and neither disputed the language of the policy. Because both parties cited to this section of the policy and both relied on it, we find that they are bound by their admissions. "An admission is an oral or written extrajudicial declaration made by or attributable to a party." *Pankow v. Mitchell*, 737 S.W.2d 293, 298(Tenn. Ct. App. 1987)(citation omitted). The Tennessee Supreme Court has held that a party may be bound by factual statements made by the party's attorney in pretrial proceedings. *Id.* (citing *Garland v. Seaboard Coastline Railroad Co.,* 658 S.W.2d 528, 531 (Tenn. 1983). Mr. Dyer's Motion for Summary Judgment and Hill Services' Response thereto were properly included in the record on appeal. Tenn. R. App. P. 24(a). Therefore, we will consider the language of the policy as to the right of conversion.

> in and of itself, does not establish insurance absent the introduction of an insurance policy.
>
> There was no proof that any life insurance existed as of the day of the death of Plaintiff's wife.
>
> On the basis of these findings, the Court dismissed Mr. Dyer's Complaint for Breach of Contract.

*Dyer*, 2008 WL 5330428 at *1-2(footnote omitted).

Following our dismissal of the initial appeal, the trial court heard the case again on November 5, 2007. By Order of March 10, 2009, the trial court confirmed its previous ruling as set out in the February 29, 2009 order, *supra*. In addition, the March 10, 2009 Order states:

> The Court of Appeals found that although the issue of notice was not alleged in Plaintiff's complaint, that the parties nevertheless litigated the issue, but this Court did not adjudicate that claim. Specifically, the Court of Appeals stated that this Court's finding that Mr. Dyer was informed that he was required to reapply for life insurance coverage when he was rehired did not address Mr. Dyer's claim that he had a right to receive notice of the conversion privilege when his employment was terminated on March 31, 2005. Therefore, the Court had not yet made a final judgment as to the issue of notice. As a result, the Court of Appeals determined that it did not have jurisdiction to decide the case on appeal and the case was remanded to this Court for a final judgment.
>
> In reviewing the evidence presented at trial, this Court finds that Plaintiff failed to carry his burden of proving that Defendant Hill Services had a duty to provide him with notice of his conversion rights or that failure of Defendant to provide such notice was the proximate cause of his damages. If he had produced the applicable insurance policy, the Court would have been able to consider the requirements of such notice. The Plaintiff, in fact, was hired back so quickly that the time period

-4-

of giving notice of conversion under the policy may not have even run out before he was rehired.

It is well settled in Tennessee that the elements of duty, breach of duty, causation and damages must be argued and proven in order for a plaintiff to succeed in a negligence case and that "no claim for negligence can succeed in the absence of any one of these elements." Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993). Plaintiff did not satisfy either of the crucial elements to withstand Defendant's Motion to Dismiss.

This Court has not seen any documents that set forth the terms and conditions of Plaintiff's termination on March 31, 2005 or the terms and conditions of his rehire on May 1st. There's nothing in the record that establishes that when he was rehired that he was promised all the same benefits, except for his rate of pay, that he had prior to his termination.

But, there is testimony in the record from Defendant's representative, Ms. Natalie Hill, that Mr. Dyer was informed that any insurance coverage, whether it be health, life or dental, had to be reapplied for and that it was optional and he had to select which of the coverages that he desired. Plaintiff Dyer, after his rehiring elected to reapply for health insurance, but he DID NOT reapply for life insurance.

Had Mr. Dyer applied for life insurance when he was reinstated, he might have had life insurance at the time of the claim. His lack of insurance coverage was NOT in fact caused by a failure of Defendant to notify him of a conversion right, but rather due to Plaintiff's failure to apply for life insurance upon his rehire after he had been terminated. Accordingly, any alleged damages suffered by Plaintiff (money paid out under the policy) were not due to the negligent notice, but due to the fact that the Plaintiff did not reapply for life insurance. Thus, Plaintiff's claim of failure of Defendant to give him notice of his right to convert the policy to an individual policy of life insurance is without merit.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, for all of the above reasons, that final judgment in this cause is rendered in favor of the Defendant, Hill Services Plumbing and HVAC and the Complaint dismissed, with prejudice, at Plaintiff's cost, for which execution may enter.

(Emphasis in original).

Mr. Dyer appeals, raising the same issue as raised in the first appeal, to wit:

Whether the trial court erred in entering an order of dismissal, and in finding that Defendant was not liable to Plaintiff for the face amount of [the] life insurance [policy] ($50,000.00), which was to have been in effect on the life of Plaintiff's wife.

After review of the record, we conclude that the case is now in the proper posture for our review. However, before reaching the issues, we first note that, because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies, in the first instance, with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

Mr. Dyer argues that Hill Services was negligent (i.e., that Hill Services breached a duty owed to Mr. Dyer), that the doctrine of equitable estoppel should apply, and that Hill Services failed to act in good faith and with due diligence. As set out in its orders, the trial court specifically found that the first two of these claims were not proven by a preponderance of the evidence, and we will review those findings. However, it appears from our review, that the issues of good faith and due diligence were not, in fact, raised at the trial level. As a general rule, "questions not raised in the trial court will not be entertained on appeal." *City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn.2004); *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn.2001). Here, the trial court did not make a specific finding concerning the allegation that Hill Services failed to exercise good faith and due diligence in this case because this theory was neither set out in the initial

-6-

complaint, nor tried by consent at the hearings. Having not raised the issues at the trial level, Mr. Dyer cannot be heard to complain on appeal.

## Negligence

A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn.2005); *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn.1998). It is well settled that "no claim [for negligence] can succeed absent any one of these elements." *Bradshaw* **v.** *Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993). In the instant case, it appears that the trial court based its decision to dismiss Mr. Dyer's complaint on a finding that Hill Services either owed no duty to Mr. Dyer, or that, if a duty existed, it was not breached.

Legal duty has been defined as the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm. *West v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn.2005). In the instant case, it appears that Mr. Dyer asserts that Hill Services owed him two duties: (1) to inform him of his right of conversion under the insurance policy (which duty arose at the time Mr. Dyer's employment was terminated), and (2) to obtain new life insurance coverage for him after he was rehired. Whether a defendant owes the plaintiff a duty of care is a question of law to be determined by the court. *West v. East Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 551 (Tenn. 2005) (citing *Burroughs v. Magee*, 118 S.W.3d 323, 327 (Tenn.2003)). Although duty is a question of law to be determined by the court, the nature of the duty a defendant may owe a plaintiff is dependent upon the resolution of certain factual issues. *Downs ex rel. Downs*, 263 S.W.3d 812, 821 (Tenn. 2008).

## Duty to inform of right of conversion

We first address Mr. Dyer's contention that Hill Services was negligent in not informing him of his right to convert his life insurance policy to an individual policy when his employment was terminated. As required by law in Tennessee, a person covered by a group life insurance policy must have the right to convert that policy to an individual policy if he or she ceases to be covered because of termination of employment. Tenn. Code. Ann. § 56-7-2305 (2009). Also, the life insurance policy itself provides the right to convert.[2]

---

[2]We note that the life insurance policy contains a requirement that the person  have been continuously covered for at least five years prior to termination to have the right to convert. We recognize

(continued...)

Accordingly, Mr. Dyer had the right to convert his life insurance policy to an individual policy upon termination of his employment.[3]

In examining this claim, we must first address whether Hill Services had a duty to notify Mr. Dyer of his right to convert. Tennessee has imposed a common law duty on employers to notify employees of the conversion right. ***Estate of Saffles v. Reliance Universal, Inc.***, 701 S.W.2d 821, 823 (Tenn. Ct. App. 1985)(affirming a finding of liability for failure to notify employee of the right to convert). "The duty of the employer to give the notice in question is but part of an employer's duty of good faith and due care in attending to the policy and the employer should make clear to the employee anything required of him to keep the policy in effect...." ***Saffles***, 701 S.W.2d at 824(quoting ***McGinnis v. Bankers Life Co.,*** 39 A.D.2d 393, 334 (N.Y. 1972). Also, the life insurance policy clearly requires that Mr. Dyer be given notice of his right to convert. At oral argument, counsel for Hill Services' conceded that there is a duty to notify Mr. Dyer of his right to convert the policy. Therefore, we find that the trial court erred in finding that Hill Services did not have a duty to provide Mr. Dyer with notice of his conversion right.

Next, we must consider whether Hill Services breached this duty. The trial court did not make a finding as to whether Hill Services breached this duty, but only found that no duty existed and that Mr. Dyer's lack of insurance was caused by his failure to reapply and not by Hill Services' failure to give notice of the right to convert. According to the policy, Mr. Dyer must have been given notice of his right to convert "at least 15 days before the end of the 31 day Conversion Period."

Hill Services' asserts that the duty may be met by providing Mr. Dyer with the certificate of coverage upon issuance of the policy. Any argument that Mr. Dyer received notice of his right to convert when he was issued his policy is without merit. A similar argument was addressed by the Sixth Circuit in ***Stafford v. First Tennessee National Bank***, 230 F.3d 1360, 2000 WL 135961 (6th Cir. 2000). The policy in ***Stafford*** provided that if

---

[2](...continued)
that Mr. Dyer did not have this insurance policy for five years prior to termination. However, any requirement that a person be covered for a certain period of time before gaining the right to convert when his policy is terminated due to a termination of employment, is contrary to state law. Tenn. Code Ann. § 56-7-2305(h)(2009). By statute, all life insurance policies in Tennessee are required to contain the right to convert when the insurance policy is terminated due to termination of employment. ***Id.*** Only when the entire group policy terminates, may a five year coverage requirement come into play. Tenn. Code Ann. § 56-7-2305(I).

[3]It is not disputed that Mr. Dyer had a life insurance policy for his wife during his first period of employment. It is only disputed whether one existed after he was re-hired.

notice was given within fifteen days of termination, then conversion must occur within thirty-one days of termination. ***Id.*** at \*2. The notice provision in the ***Saffles*** policy also provided that if notice was given more than fifteen days after termination, then conversion must occur by the earlier of either fifteen days from notice or sixty days after the expiration of the original thirty-one day period. ***Id.*** at \*2. The defendant in ***Stafford*** argued that notice had been provided to the insured in the certificate of insurance upon issuance of the policy. ***Id.*** at \*7. The ***Stafford*** court rejected the argument based on the plain language of the policy. ***Id.*** The ***Stafford*** court found that the first part of the notice provision required notice within fifteen days of termination. ***Id.*** However, the court reasoned that if it accepted the defendant's argument, then this provision would likely never apply. ***Id.*** The certificate of insurance would almost always be issued well before termination and therefore notice would almost never occur within the initial fifteen day period. ***Id.*** The ***Stafford*** court then looked at the second part of the notice provision which provided for notice more than fifteen days from termination. ***Id.*** The ***Stafford*** court stated that "it would be ludicrous to calculate the time period from the earlier of either fifteen days after notice is received or sixty days from the end of the original thirty-one day period." ***Id.*** The ***Stafford*** court reasoned that if the original receipt of the certificate of insurance was sufficient, there would essentially be no right to convert as the earlier of the two would always be the fifteen days after notice was received, which would run most likely before the policy was even terminated. ***Id.*** Accordingly, the ***Stafford*** court held that notice was required upon or after termination of the policy. ***Id.*** at \*8.

The situation in the case before this Court is practically identical. The policy provides:

> If a person eligible for Conversion is not given notice at least 15 days before the end of the 31 Day Conversion Period, the time the person has to convert will be extended an additional 15 days after notice is given. However, coverage under the group Policy will not continue past the 31 Day Conversion Period. In no case will the additional time to convert extend beyond 60 days following the end of the 31 Day Conversion Period.
>
> The following will constitute notice of a person's right to convert:
> • This Certificate of insurance or other written notice presented to the person;
> • This Certificate of Insurance or other written notice mailed by the Policyholder to the last known address of the person; or

- This Certificate of Insurance or other written notice mailed by BMA to the last known address (as furnished by the Policyholder) of the person.

As in ***Stafford***, the time period for notice and conversion is dependent on the 31 Day Conversion Period, which does not begin to run until the policy is terminated. It would be ludicrous to calculate the time required for sufficient notice before the 31 Day Conversion Period begins. Additionally, the policy provides for an extension of the right to convert if notice is not provided fifteen days before the end of the Conversion Period. If the certificate of insurance provided to the insured upon issuance of the policy, was deemed sufficient notice, the need to extend the 31 Day Conversion Period, as provided for in the policy, would never arise. Furthermore, it would be illogical to require the party to give notice of the right to convert if the certificate of insurance detailing that right and provided to the insured upon issuance of the policy, provided sufficient notice. Accordingly, we find that Mr. Dyer must have been provided notice of his right to convert upon or after termination of the policy.

According to the policy, there were three ways this requirement could be met: (1) He could have been presented with the certificate of insurance or other written notice in person; (2)The policyholder, Hill Services, could have mailed him the certificate of insurance or other written notice; or (3) the insurance company could have mailed the certificate of insurance or other written notice to an address for Mr. Dyer, provided to them by Hill Services. We have reviewed the record in this case, and find that Hill Services breached the duty owed to Mr. Dyer by failing to provide him with notice of his right to convert after his termination. At trial, Mr. Dyer testified that he was never provided with notice of his right to convert after his termination. Natalie Hill testified that neither she nor any one in her office informed Mr. Dyer of his right to convert. Additionally, Natalie Hill testified that she "couldn't say" whether her insurance broker had notified Mr. Dyer. Based on the evidence in the record, we find that Hill Services breached the duty owed to Mr. Dyer to notify him of his right to convert the policy after his termination.

Finding a duty and the breach of that duty, we must next examine the issue of causation. The trial court found that Mr. Dyer's damages were not caused by Hill Services' failure to notify him of his right to convert, but by his failure to reapply for life insurance. Moreover, at oral argument, Hill Services' submitted that the damages were not caused by its failure to notify, but by Mr. Dyer's failure to reapply. It appears that the trial court and Hill Services are merging the two separate claims. Mr. Dyer alleged first, that Hill Services' negligence in not informing him of his right to convert caused him damages, and second, that Hill Services' negligence in not obtaining new life insurance for him once he was rehired also caused him damages. Mr. Dyer consistently maintained throughout this case, that had he known his life insurance had been terminated he would have taken steps to obtain other

insurance. Accordingly, we find that had he been notified of his right to convert his policy to an individual one, he would have. His failure to apply for a new policy offered to him later is irrelevant as to his first claim. Therefore, by failing to notify Mr. Dyer of his right to convert, Hill Services was the cause of any damages resulting from the first policy not being converted.

The final element of a negligence action is damages. In a case where the duty to notify of the right to convert has been breached, damages equal the amount the insurance policy would have been converted to. *Saffles*, 701 S.W. 2d at 824. The policy at issue provided:

> The amount of the converted coverage will be the lesser of:
>
> 1.    The amount of insurance under the Policy less any amount provided by a new group policy for which the insured becomes eligible within 31 days of termination; or
> 2.    $10,000.

However, we find no evidence in the record on what the converted coverage would be. Accordingly, we reverse the decision of the trial court finding that there was no duty to notify Mr. Dyer of the right to convert, and remand for an evidentiary hearing on the issue of damages and entry of an order in accordance with this opinion.

**Duty to obtain life insurance for Mr. Dyer and his wife upon his rehire.**

As noted above, although duty is a question of law to be determined by the court, the nature of the duty a defendant may owe a plaintiff is dependent upon the resolution of certain factual issues. *Downs ex rel. Downs*, 263 S.W.3d 812, 821 (Tenn. 2008) As stated in the Restatement (Second) of Torts § 324A[4]:

> One who undertakes ... to render services to another which he should recognize as necessary for the protection of a third person

_____

[4] Though the Supreme Court has not expressly adopted § 324A of the Restatement, the provision has been extensively cited and relied upon in cases addressing the liability of a person for a breach of the assumed duty of reasonable care, and, therefore, we find the provision applicable in this case. *See Barron v. Emerson Russell Maintenance Co.*, No. W2008-01409-COA-R3-CV, 2009 WL 2340990, at *8 n. 5 (Tenn .Ct. App. July 30, 2009) (citing *Biscan v. Brown*, 160 S.W.2d 462, 483 (Tenn.1994); *Speaker v. Cates Co.*, 879 S.W.2d 811, 813 (Tenn.1994); *Collins v. Arnold*, No. M2004-02513-COA-R3-CV, 2007 WL 4146025, at * 14 (Tenn. Ct. App. Nov. 20, 2007) perm. app. denied (Tenn. Apr. 14, 2008)).

..., is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965); *see also Marr v. Montgomery Elevator Co.*, 922 S.W.526, 529 (Tenn. Ct. App.1995) (citing *Nidiffer v. Clinchfield Railroad Co.*, 600 S.W.2d 242 (Tenn. Ct. App.1980); *Gaines v. Excel Industries, Inc*., 667 F.Supp. 569 (M. D. Tenn.1987)). Hill Services' representative, Natalie Hill testified that, although it is not Hill Services' usual custom to repeatedly remind employees to sign up for insurance coverage, they did so in this case, to wit:

Q. Do you always take such an active role in helping people with their insurance applications?

A. No.

Q. What made this circumstance different?

A. Mr. Dyer and I ha[d] previous discussions about his need to get his prescription filled.... [He needed] to stay on his prescription drug in order for him to work effectively. So, it was in my interest...to encourage him to get health insurance....

Giving every benefit to Mr. Dyer, we conclude that, in the instant case, Hill Services undertook a duty.

Based upon the foregoing, and in light of the particular facts of this case, we conclude that the trial court erred in finding that Hill Services owed no duty to Mr. Dyer *vis a vis* reinstatement of his insurance. Our conclusion, however, does not, *ipso facto*, mandate a reversal of the trial court's order. Rather, it shifts the gravamen of this case to the question of whether Hill Services breached the duty it undertook. Before addressing that question, we note that the duty Hill Services assumed is narrow as it extends only to whether Hill Services properly informed Mr. Dyer that he had to refile his paperwork in order to continue his insurance coverage after he was rehired.

-12-

Turning to the record, Mr. Dyer argues that Hill Services breached the duty owed to inform Mr. Dyer that he needed to apply for life insurance after his reinstatement. The record, however, does not support this assertion. Hill Services representative, Natalie Hill, testified, in relevant part, as follows:

> Q. At the time of [Mr. Dyer's] rehiring, did you [Ms. Hill] have conversations with him concerning insurance?
>
> A. I did.
>
> Q. And could you describe what those conversations were?
>
> A. Yes. I let Mr. Dyer know that it was important for him to let me know what coverages he would like to have, and whether it be life, dental or health.
>
> Q. And when was that conversation?
>
> A. There were several conversations within the first 30-day period.
>
> Q. And in your first conversation, what happened?
>
> A. In the first conversation he didn't respond.
>
>     *               *               *
>
> Q. Okay, and the subsequent conversations or conversation, did you speak with Mr. Dyer concerning his insurance coverage?
>
> A. Yes. I continued to remind him that it was important for him to submit [an] application for the coverages he desired.
>
> Q. Did he indicate his desire for any particular applications?
>
> A. He indicated a desire for health insurance.
>
>     *               *               *

Q. Had Mr. Dyer applied for any insurance at [the end of the 30 day period]?

A. No.

Q. What happened then?

A. Then I let him know again that he needed to submit applications for the coverages that he wanted.

Q. And did he do that?

A. At this point, when I let him know "This is your last opportunity. If you want to get on health insurance–you've expressed to me that you have a need here–you need to do this, you know, now or you've got to wait for a year."

*                         *                         *

Q. ...So, he did then submit a health insurance application?

A. He did.

Mr. Dyer's testimony contradicts Ms. Hill's. Mr. Dyer stated that he did not know that he had to reapply for insurance, but he also testified that he never did any of the paperwork and that his wife took care of all the business of the house, including insurance-related information. The Chancellor weighed the competing testimonies and concluded that:

> [T]here is testimony in the record...from Ms. Hill that Mr. Dyer was informed that any insurance coverage, whether it be health, life or dental, had to be reapplied for and that it was optional and he had to select which coverages he desired. Plaintiff Dyer, after his rehiring elected to reapply for health insurance, but he DID NOT reapply for life insurance.

As noted above, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995). The Chancellor also correctly noted that the "burden [of proof] was on...Mr. Dyer." From our

review of the entire record in this case, we conclude that the evidence does not preponderate against the trial court's finding that Hill Services upheld its duty to Mr. Dyer not only by informing him that he had to reapply for insurance coverage, but also by encouraging him to apply for insurance coverage. Having found that the evidence does not preponderate against this finding, Mr. Dyer has not proven an essential element to establish a *prima facie* case for negligence by Hill Services for failing to obtain a new insurance policy upon Mr. Dyer's rehire. Based upon this finding, we pretermit discussion of the other elements of negligence.

## Equitable Estoppel

In ***Baliles v. Cities Serv. Co.***, 578 S.W.2d 621 (Tenn.1979), the Tennessee Supreme Court described equitable estoppel as follows:

> Equitable estoppel, in the modern sense, arises from the "conduct" of the party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do any thing. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or have been enforceable by other rules of law, unless prevented by estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.

*Id*. at 624. Whether a party should be estopped depends upon the totality of the factual situation. ***Smith v. Smith***, No. M2004-00257-COA-R3-CV, 2005 WL 3132370, at *7 (Tenn. Ct. App. Nov. 22, 2005). In ***Smith***, we noted that:

> [t]he general requirements for reliance on equitable estoppel are conduct by the party to be estopped that is relied upon by the other party, leading him to change his position. In most situations,[t]he doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

> Equitable estoppel also requires the following elements with respect to the party asserting estoppel: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Smith*, 2005 WL 3132370, at \*7 (quoting ***Osborne v. Mountain Life Ins. Co.***, 130 S.W.3d 769, 774 (Tenn.2004) (citations omitted)).

Mr. Dyer relies on the factual dispute (i.e., whether Mr. Dyer was told he needed to apply for the life insurance) in support of his equitable estoppel argument. Mr. Dyer asserts that no one told him that he needed to re-apply for life insurance after his rehire. As discussed above, there is evidence in the record to support the trial court's conclusion that Ms. Hill told Mr. Dyer numerous times that he needed to resubmit his application for insurance. Consequently, the record does not support a finding that Hill Services concealed anything from Mr. Dyer.

Concerning the fact that life insurance premiums were deducted from Mr. Dyer's check after his reinstatement, there is no evidence in the record that this was anything but a clerical mistake on the part of Hill Services. Once the mistake was realized, Natalie Hill wrote a note to Mr. Dyer apologizing for the mistake and the confusion caused thereby, and a reimbursement was immediately issued. Again, there is no evidence that Hill Services concealed anything from Mr. Dyer. Moreover, the evidence in the record indicates that Mr. Dyer was not even aware that deductions from his checks for life insurance were being made until sometime after his wife died. Consequently, we cannot expand the doctrine of equitable estoppel to say that he detrimentally relied on an event that he was not even aware of until after the mistake had been recognized and remedied by Hill Services.

Finally, it is clear from the record that Mr. Dyer had all of the knowledge necessary to make a decision regarding purchasing new life insurance. From the totality of the circumstances, there is simply no evidence that Hill Services attempted to mislead Mr. Dyer in any way. Rather, the evidence suggests that Hill Services went to greater lengths than normal to inform Mr. Dyer of his obligation to reapply for any insurance coverage he needed. There is simply no basis for finding that Hill Services tried to conceal anything from Mr. Dyer; rather, it appears that, despite Hill Services best efforts, it was Mr. Dyer who failed to take the steps necessary to obtain new life insurance coverage in this case.

**Conclusion**

For the foregoing reasons, we affirm in part and reverse in part the order of the trial court. Costs of this appeal are assessed equally against the Appellant, James E. Dyer, and his surety, and the Appellee, Hill Services Plumbing and HVAC.


_____
J. STEVEN STAFFORD, J.